UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUIS ALBERTO ALVAREZ, JR., Individually and on behalf of himself and others similarly situated | Civ. A. No. 1:16-cv-04156-CM |
| Plaintiff, v. | Hon. Colleen McMahon |
| NATIONAL DEBT RELIEF, LLC, DANIEL TILIPMAN, and ALEX KLEYNER | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF DEFENDANT NATIONALDEBT RELIEF, LLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS AND COMPEL ARBITRATION**

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. RELEVANT FACTUAL BACKGROUND ..........................................................................1

III. QUESTION PRESENTED ....................................................................................................3

IV. ARGUMENT ..........................................................................................................................3

    A. This Court Should Dismiss This Action and Order Mr. Alvarez to Arbitrate His Claim. ...........................................................................................3

        1. The Federal Arbitration Act and Supreme Court Authority Require the Court to Enforce the Arbitration Provision. ..........................................3
        2. The Arbitration Agreement Is Valid and Binding. ......................................5
        3. Mr. Alvarez's Claims Fall Within the Scope of the Arbitration Agreement. ....................................................................................................7
        4. Mr. Alvarez's Claims Are Arbitrable. ..........................................................7

    B. This Court Should Compel Mr. Alvarez to Arbitrate Only His Individual Claim Because NDR Did Not Agree to Submit to Group Arbitration. ...................8
    C. The Court Should Dismiss Mr. Alvarez's Complaint. ..........................................10
    D. The Court Should Grant NDR Its Costs in Pursuing This Motion. .......................10

V. CONCLUSION .....................................................................................................................11

i

# **TABLE OF AUTHORITIES**

**Cases**

*Adkins v. Labor Ready, Inc.*,
  303 F.3d 496 (4th Cir. 2002) .................................................................................................. 9

*Arrigo v. Blue Fish Commodities, Inc.*,
  704 F.Supp.2d 299 (S.D.N.Y.2010) ..................................................................................... 10

*Blair v. Scott Specialty Gases*,
  283 F.3d 595 (3d Cir. 2002) .................................................................................................. 6

*Carter v. Countrywide Credit Indus., Inc.*,
  362 F.3d 294 (5th Cir. 2004) .............................................................................................. 8, 9

*Circuit City Stores, Inc. v. Adams*,
  532 U.S. 105 (2001) ............................................................................................................... 6

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) ............................................................................................................... 3

*Dixon v. NBCUniversal Media, LLC*,
  947 F. Supp. 2d 390 (S.D.N.Y. 2013) .................................................................................... 9

*Edwards v. Macy's Inc.*,
  No. 14CV-8616-CM-JLC, 2015 WL 4104718 (S.D.N.Y. June 30, 2015) ............................. 9

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995) ............................................................................................................... 8

*Grabbe v. Halla Am., Inc.*,
  No. 00-4100, 2000 WL 1701750 (D. Kan. Oct. 23, 2000) .................................................. 10

*Grady v. DIRECTV Customer Servs. Inc.*,
  No. 14-03474, 2015 WL 3619337 (D. Colo. June 10, 2015) ................................................ 6

*Green Tree Financial Corp.-Alabama v. Randolph*,
  531 U.S. 79 (2000) ............................................................................................................ 4, 5

*Harrington v. Atl. Sounding Co., Inc.*,
  602 F.3d 113 (2d Cir. 2010) .................................................................................................. 5

*Hill v. Peoplesoft USA, Inc.*,
  412 F.3d 540 (4th Cir. 2005) ................................................................................................. 6

*Hines v. Overstock.com, Inc.*,
  380 Fed. App'x 22 (2d Cir. 2010) (unpublished) .................................................................. 5

*Hooters of America, Inc. v. Phillips*,
  173 F.3d 933 (4th Cir. 1999) ................................................................................................. 4

*Horenstein v. Mortg. Mkt., Inc.*,
  9 Fed. App'x 618 (9th Cir. 2001) .......................................................................................... 9

*Kruse v. AFLAC Int'l, Inc.*,
  458 F. Supp. 2d 375 (E.D. Ky. 2006) ................................................................................... 6

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ................................................................................................................ 4

*Moton v. Maplebear, Inc.*,
  No. 15 Civ. 8879 (CM), 2016 WL 616343 (S.D.N.Y. Feb. 9, 2016) .................................. 5, 7

*Oldroyd v. Elmira Sav. Bank, FSB*,
  134 F.3d 72 (2d Cir. 1998) .................................................................................................. 5

*Owen v. Bristol Care, Inc.*,
  702 F.3d 1050 (8th Cir. 2013) ............................................................................................. 9

*Patterson v. Raymours Furniture Co., Inc.*,
  659 F. App'x 40, 43–44 (2d Cir. 2016) ............................................................................... 9

*Pennington v. Northrop Grumman Space & Mission Sys. Corp.*,
  269 Fed. App'x. 812 (10th Cir. 2008) (unpublished) .......................................................... 6

*Raniere v. Citigroup Inc.*,
  553 Fed. App'x 11 (2d Cir. 2013) (unpublished) ............................................................... 9

*Reynolds v. de Silva*,
  No. 09 Civ. 9218 (CM), 2010 WL 743510 (S.D.N.Y. Feb. 24, 2010) ................................ 7

*Sanchez v. Nitro-Lift Techs., L.L.C.*,
  762 F.3d 1139 (10th Cir. 2014) ........................................................................................... 8

*Seus v. John Nuveen & Co.*,
  146 F.3d 175 (3d Cir. 1998) ............................................................................................ 4, 5

*Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*,
  559 U.S. 662 (2010) .................................................................................................. 8, 9, 10

*Vilches v. Travelers Co.*,
  413 Fed. App'x 487 (3d Cir. 2011) (unpublished) ............................................................. 9

*Walker v. Ryan's Family Steak Houses, Inc.*,
  400 F.3d 370 (6th Cir. 2005) ............................................................................................... 8

**Statutes**

9 U.S.C. § 1 ................................................................................................................................ 1

9 U.S.C. § 2 ................................................................................................................................ 4

9 U.S.C. § 3 ............................................................................................................................ 1, 4

9 U.S.C. § 4 ............................................................................................................................ 1, 4

29 U.S.C. § 201 .......................................................................................................................... 1

29 U.S.C. § 216(b) ..................................................................................................................... 8

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................................................. 1

**I.     INTRODUCTION**

On June 3, 2016, Plaintiff Luis Alberto Alvarez ("Mr. Alvarez"), a former employee of Defendant National Debt Relief, LLC ("NDR"), filed this lawsuit against NDR and two of its corporate officers. He claims that NDR failed to pay him overtime wages for his time worked over 40 hours per week in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA") and the New York Labor Law ("NYLL"). But Mr. Alvarez executed a Mutual Arbitration Agreement ("Arbitration Agreement") contained within the Employee Handbook that requires him to resolve any employment-related disputes with Defendants via binding arbitration. The Arbitration Agreement unambiguously states that "dispute[s] related to your employment or termination of employment" must be arbitrated, and the Arbitration Agreement specifically covers claims "for wages and other compensation" brought under the FLSA and the NYLL. Thus, Mr. Alvarez's civil lawsuit is in direct contravention of the Arbitration Agreement. As a result, NDR now moves to dismiss Mr. Alvarez's lawsuit pursuant to Fed. R. Civ. P. 12(b)(1) and Sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"). NDR seeks an order: (1) dismissing this lawsuit; and (2) because the Arbitration Agreement forbids class or group arbitration, compelling Mr. Alvarez to arbitrate his individual claim in accordance with the terms of the Arbitration Agreement.[1]

**II.    RELEVANT FACTUAL BACKGROUND**

From January 2015 until April 2016, Mr. Alvarez worked for NDR in New York City as a Certified Debt Specialist. (Compl. ¶¶ 5, 6, 25). In February 2016, as a condition of ongoing

---

[1] Plaintiff has yet to serve the complaint on the individual Defendants Daniel Tilipman and Alex Kleyner. Accordingly, they are not party to the instant Motion. Greenberg Traurig, LLP, however, represents both individuals for purposes of this action, and will appear on their behalf at the appropriate time. Greenberg Traurig can confirm that both individuals understand that as officers of NDR, they too must arbitrate any disputes between and amongst them, NDR, and employees, and that they therefore agree to the relief sought in this Motion.

employment, Mr. Alvarez signed an acknowledgement stating that he had read the Employee Handbook, and that he "specifically acknowledge[s] and agree[s] to arbitrate disputes with NDR, its successors, predecessors, benefit plans, directors, officers, employees, supervisors and agents, in accordance with the Mutual Arbitration Agreement contained in this handbook." (**Ex. A** at 60). Mr. Alvarez further stated: "I have reviewed the Mutual Arbitration Agreement, understand its terms, and by my signature below am voluntarily agreeing to its terms." (*Id.*). Mr. Alvarez provided his electronic signature on the acknowledgement form as a condition to his employment with NDR. (**Affidavit in Support of Joanne P. Murray** at ¶¶ 4–5).

> The Arbitration Agreement, in relevant part, states as follows:
>
> In exchange for your employment or continued employment with National Debt Relief (together with its […] officers, supervisors and agents, the "Company"), and in exchange for the compensation and benefits you receive and will receive from the Company, you and the Company agree to arbitrate all disputes described below through binding, individual arbitration in accordance with this agreement ("Agreement"). If a dispute related to your employment or termination of employment arises, both you and the Company agree to submit the dispute to binding arbitration. ***Disputes covered by this arbitration agreement include, but are not limited to***, […] ***claims for wages and other compensation (including under the Fair Labor Standards Act*** [and] ***the New York Labor Law*** […])"

(*Id.* at 48) (emphasis added). The Arbitration Agreement also forbids class or collective arbitrations, stating that "[c]laims must be brought" in "your [] individual capacity, not as plaintiffs or class members in any purported class, collective, or representative proceeding." (*Id.* at 49). The arbitrator does not have authority to hear class claims. (*Id.* at 49–50).

It also states that arbitration will take place in New York City, where Mr. Alvarez alleges he resides (Compl. ¶ 5), before JAMS in accordance with JAMS Employment and Arbitration Rules & Procedures. (*Id.* at 50). The Arbitration Agreement further provides guidance on how the arbitrator may make his or her decision. (*Id.* at 50–51). NDR is obligated to pay the arbitrator's fees, except for the amount equal to filing fees Mr. Alvarez would have had to pay in

a New York state court. (*Id.* at 51). The arbitrator is permitted to cost-shift or award of attorneys' fees to the prevailing party only "if expressly permitted by statute." (*Id.*).

The Arbitration Agreement permits "[e]ither party [to] bring an action in court to compel arbitration under this Agreement […]" (*Id.* at 50). If either party commences a legal action covered by the Arbitration Agreement, "the responding party shall be entitled to recover from the other party all damages, costs, expenses and attorneys' fees incurred as a result of such action, including appeal." (*Id.* at 51). The closing statement of the Arbitration Agreement provides, consistent with the statement Mr. Alvarez signed, that "[b]y signing the acknowledgement attached at the end of the handbook in which this policy is included, you are indicating your acceptance of and agreement to the terms of this Mutual Arbitration Agreement." (*Id.* at 52).

### III. QUESTION PRESENTED

- Whether Section 4 of the FAA requires this Court to dismiss this lawsuit and order Mr. Alvarez to arbitrate his individual claim because he entered into a valid and binding Arbitration Agreement that covers his claims and which forbids the arbitration of class, collective, or group claims.

### IV. ARGUMENT

#### A. This Court Should Dismiss This Action and Order Mr. Alvarez to Arbitrate His Claim.

1. *The Federal Arbitration Act and Supreme Court Authority Require the Court to Enforce the Arbitration Provision.*

The FAA mandates that federal courts compel arbitration of claims that parties have agreed to arbitrate. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which

an arbitration agreement has been signed."). Specifically, Section 4 of the FAA provides, in relevant part, that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement . . . upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not an issue, *the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.*

9 U.S.C. § 4 (emphasis added).[2]

An agreement to arbitrate is "valid, irrevocable, and enforceable" under the FAA. 9 U.S.C. § 2. The FAA embodies the "liberal federal policy favoring arbitration agreements" and "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (citing 9 U.S.C. § 2). Thus, "[w]hen a valid agreement to arbitrate exists between the parties and covers the matter in dispute, the FAA commands the federal courts to stay any ongoing judicial proceedings . . . and to compel arbitration." *Hooters of America, Inc. v. Phillips*, 173 F.3d 933, 937 (4th Cir. 1999) (emphasis added); *Seus v. John Nuveen & Co.*, 146 F.3d 175, 179 (3d Cir. 1998) (overruled on other grounds by *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000)) ("If a party to a binding arbitration agreement is sued in federal

---

[2] Section 3 of the FAA, in turn, states: "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

4

court on a claim that the plaintiff has agreed to arbitrate, it is entitled under the FAA to a stay of the court proceeding pending arbitration . . . and to an order compelling arbitration.").

There are four factors that a court must consider when deciding a motion to compel arbitration:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*Moton v. Maplebear, Inc.*, No. 15 Civ. 8879 (CM), 2016 WL 616343, at *3–4 (S.D.N.Y. Feb. 9, 2016) (quoting *Oldroydv. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75–76 (2d Cir. 1998)).

### 2. *The Arbitration Agreement Is Valid and Binding.*

The party seeking to compel arbitration "must make a *prima facie* initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement 'in issue.'" *Hines v. Overstock.com, Inc.*, 380 Fed. App'x 22, 24 (2d Cir. 2010). To satisfy the initial burden, the moving party need not establish that "the agreement would be enforceable, merely that one existed." *Id.* Once the moving party makes a *prima facie* showing that an agreement existed, the party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010) (citing *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91–92 (2000)).

Here, NDR has submitted admissible evidence that Mr. Alvarez entered into a binding arbitration agreement covering the claims asserted in this lawsuit. On February 12, 2016, he signed a document in which he "specifically acknowledge[s] and agree[s] to arbitrate disputes with NDR, its successors, predecessors, benefit plans, directors, officers, employees, supervisors

and agents, in accordance with the Mutual Arbitration Agreement contained in this handbook." (**Ex. A** at 60). Mr. Alvarez also agreed: "I have reviewed the Mutual Arbitration Agreement, understand its terms, and by my signature below am voluntarily agreeing to its terms." (*Id.*). Mr. Alvarez provided an electronic signature, which is legally valid. *Maplebear*, 2016 WL 616343, at *1 n.1 (stating electronic signatures are valid and enforceable assuming they comply with U.S. Electronic Signature in Global and National Commerce Act of 2000).

Mr. Alvarez also received consideration for his consent to the Arbitration Agreement, namely his continued employment with NDR and his compensation and benefits. (**Ex. A** at 48).[3] Following *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001), federal district courts have routinely held that accepting an agreement to arbitrate as a condition of employment is adequate consideration to support an arbitration agreement. *See, e.g.*, *Grady v. DIRECTV Customer Servs. Inc.*, No. 14-03474, 2015 WL 3619337, at *4 (D. Colo. June 10, 2015) ("The Arbitration Agreement was also supported by consideration, in that [defendant] conditioned [p]laintiff's employment on her signing the Agreement."); *Kruse v. AFLAC Int'l, Inc.*, 458 F. Supp. 2d 375, 385 (E.D. Ky. 2006) ("Agreements to arbitrate as a condition of employment constitute consideration and are enforceable under the FAA . . . . [E]ven if the arbitration agreement was not a condition of employment, an arbitration clause requiring both parties to submit equally to arbitration constitutes adequate consideration."). Here, as a condition of his

---

[3] The mutual obligation to arbitrate, *i.e.*, that both NDR and Mr. Alvarez gave up their rights to use the federal and state courts in most instances, is also valid consideration. *See, e.g.*, *Pennington v. Northrop Grumman Space & Mission Sys. Corp.*, 269 Fed. App'x. 812, 819 (10th Cir. 2008) (unpublished) ("In the employment context, a reciprocal agreement to arbitrate can provide the requisite consideration so long as the employer does not retain the unilateral authority to terminate or modify the arbitration agreement once the employee's claim has accrued."); *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002) ("When both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced."); *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 544 (4th Cir. 2005) (same).

continued employment, Mr. Alvarez accepted the terms and conditions of the Arbitration Agreement, which require arbitration of all his claims.

In short, the Arbitration Agreement is valid and enforceable against Mr. Alvarez.

3. *Mr. Alvarez's Claims Fall Within the Scope of the Arbitration Agreement.*

Not only did Mr. Alvarez execute a valid Arbitration Agreement, which requires the parties to arbitrate claims arising from his employment with NDR, but the Arbitration Agreement expressly covers the wage and hour claim he asserts. As discussed above, the Arbitration Agreement unambiguously states that it covers disputes "related to [Mr. Alvarez's] employment[,]" including wage and hour disputes such as this one. (**Ex. A** at 48) ("Disputes covered by this arbitration agreement include, but are not limited to, […] claims for wages and other compensation (including under the Fair Labor Standards Act [and] the New York Labor Law […])"). There is no doubt that seeking payment for overtime compensation allegedly due and owing falls squarely within the scope of the Arbitration Agreement. Indeed, the laws under which Mr. Alvarez has sued in Counts I–III of his complaint are expressly mentioned as being covered.[4] Accordingly, there is no doubt that this case falls within the scope of the Arbitration Agreement.

4. *Mr. Alvarez's Claims Are Arbitrable.*

"Courts in this District have repeatedly found both FLSA and NYLL claims to be arbitrable." *Maplebear*, 2016 WL 616343, at *5 (citing *Reynolds v. de Silva*, No. 09 Civ. 9218 (CM), 2010 WL 743510 at *5 (S.D.N.Y. Feb. 24, 2010) (collecting cases)). *See also, e.g.*,

---

[4] Counts IV of Mr. Alvarez's complaint is for conversion, which arises out of NDR's alleged failure to return Mr. Alvarez's Aeron Herman Miller office chair following the termination of his employment. (Compl. ¶¶ 41–44, 72–75). Apart from the fact that this claim is moot (as NDR purchased him an identical chair), it is also arbitrable. It relates to the termination of Mr. Alvarez's employment, a subject expressly covered by the Arbitration Agreement. Moreover, the Arbitration Agreement covers employment-related claims that arise "in tort." (**Ex. A** at 48).

7

*Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1148 (10th Cir. 2014) (finding plaintiff's FLSA claim fell within scope of arbitration clause and was thus subject to arbitration); *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370 (6th Cir. 2005) (stating statutory claims, including FLSA claims, properly subject to arbitration); *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294 (5th Cir. 2004) (holding FLSA claims validly subject to individually-executed pre-dispute arbitration agreements).

> **B.  This Court Should Compel Mr. Alvarez to Arbitrate Only His Individual Claim Because NDR Did Not Agree to Submit to Group Arbitration.**

As noted above, Mr. Alvarez purports to bring his FLSA and NYLL claims in this case not on only behalf of himself but all other similarly situated Certified Debt Specialists (who also presumably signed their own individual Arbitration Agreements). In other words, he wants to pursue a collective action under Section 216(b) of the FLSA. (*See* Compl. ¶¶ 45–50). Mr. Alvarez, however, may pursue arbitration on behalf of a class or group ***only*** if NDR agreed to such class-wide or group arbitration. This is so because "arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Thus, in *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 684 (2010), the United States Supreme Court held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." (emphasis in original).

In this case, there can be no doubt that the parties agreed that no class-wide or collective arbitrations would be permitted, as the Arbitration Agreement requires that claims be brought in the party's individual capacity, and denies the arbitrator the authority to hear class-wide arbitrations, absent mutual consent of both parties. (**Ex. A** at 49–50).

Federal courts, including the Second Circuit, routinely enforce class and collective action waivers and compel arbitration of the plaintiff's individual claims. *See, e.g.*, *Patterson v. Raymours Furniture Co., Inc.*, 659 F. App'x 40, 43–44 (2d Cir. 2016), as corrected (Sept. 7, 2016), as corrected (Sept. 14, 2016); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1055 (8th Cir. 2013); *Vilches v. Travelers Co.*, 413 Fed. App'x 487, 494 n.4 (3d Cir. 2011); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1378 (11th Cir. 2005) (enforcing class and collective action waiver and compelling arbitration of individual FLSA overtime claim); *Carter*, 362 F.3d at 298 (enforcing collective action waiver); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002) (finding in the context of a collective action waiver "no suggestion in the text, legislative history, or purpose of the FLSA that Congress intended to confer a nonwaivable right to a class action under that statute"); *Horenstein v. Mortg. Mkt., Inc.*, 9 Fed. App'x 618, 619 (9th Cir. 2001) ("Although plaintiffs who sign arbitration agreements lack the procedural right to proceed as a [collective action], they nonetheless retain all substantive rights under the [FLSA]."). All district courts in this Circuit have held that FLSA collective action waivers are *not* unenforceable per se. *Dixon v. NBCUniversal Media, LLC*, 947 F. Supp. 2d 390, 403 (S.D.N.Y. 2013) (collecting cases). Notably, the Second Circuit reversed the lone district court decision holding otherwise in an unpublished decision. *See Raniere v. Citigroup Inc.*, 553 Fed. App'x 11 (2d Cir. 2013). As such, the Arbitration Agreement's provision limiting Mr. Alvarez to an individual claim is enforceable. Because the scope of the Arbitration Agreement here is clearly limited to individual claims, and *not* class-wide or collective claims, the Court should direct that Mr. Alvarez's individual claim should proceed to arbitration.[5]

---

[5] Because the agreement at issue includes language expressly forbidding class-wide arbitration procedures, the Court's decision in *Edwards v. Macy's Inc.*, No. 14CV-8616-CM-JLC, 2015 WL 4104718, at *9–12 (S.D.N.Y. June 30, 2015) should not control. In *Edwards*, the

C.  **The Court Should Dismiss Mr. Alvarez's Complaint.**

Notwithstanding the language of section 3 of the FAA, other district courts within this Circuit have found that a case may be dismissed, rather than stayed, when all claims are arbitrable. *Arrigo v. Blue Fish Commodities, Inc.*, 704 F.Supp.2d 299, 304–05 (S.D.N.Y. 2010). Because that is the case here, the Court should dismiss this action with prejudice.

D.  **The Court Should Grant NDR Its Costs in Pursuing This Motion.**

The Arbitration Agreement requires that, if either party commences a legal action covered by the Arbitration Agreement, "the responding party shall be entitled to recover from the other party all damages, costs, expenses and attorneys' fees incurred as a result of such action, including appeal." (**Ex. A** at 51). Accordingly, NDR seeks to enforce this provision, and impose costs upon Mr. Alvarez.

---

Court faced an arbitration clause that contemplated arbitration of "third-party" claims, and decided to leave for the arbitrator whether this language permitted class–wide arbitration. Of course, the scope of the Arbitration Agreement is narrower, and expressly forbids class–wide arbitration.

## V.　CONCLUSION

For all the foregoing reasons, this Court should grant Defendant NDR's Motion to Dismiss or, in the Alternative, to Stay Proceedings and compel compliance with the arbitration provision of the Employee Agreement. The Court should issue an order that dismisses this case and compels Mr. Alvarez to submit his dispute to final and binding individual arbitration.

Dated: May 3, 2017

Respectfully submitted,

/s/ James N. Boudreau
James N. Boudreau (*admitted pro hac vic*e)
2700 Two Commerce Square
2001 Market St.
Philadelphia, PA 19103
Tel: (215) 988-7833
Fax: (215) 717-5209
boudreauj@gtlaw.com

Jerrold F. Goldberg
MetLife Building
200 Park Avenue
New York, NY 10166
Tel: (212) 801-9209
Fax: (212) 801-6400
goldbergj@gtlaw.com

*Attorneys for Defendant National Debt Relief, LLC*